# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

|  |  |  |
|---|---|---|
| MARS, INCORPORATED, | : | |
| | : | |
| Plaintiff and | : | |
| Counterclaim Defendant, | : | |
| | : | |
| v. | : | |
| | : | CIVIL ACTION NO. 90-49 (JCL) |
| COIN ACCEPTORS, INC., | : | |
| | : | **FINDINGS OF FACT AND** |
| Defendant and | : | **CONCLUSIONS OF LAW** |
| Counterclaim Plaintiff. | : | **RE: CLAIM CONSTRUCTION** |
| | : | **AND INFRINGEMENT OF** |
| | : | **COINCO U.S. PATENT** |
| | : | **# 4,254,857** |
| | : | |

_____

**LIFLAND, District Judge**

The coin tube sensors of Mars' products are accused of infringement of Claims 1-3, 5 and 9 of Coinco U.S. Patent No. 4,254,857 (the '857 patent). Claims 11-13 were originally asserted but withdrawn.  Mars describes these sensors as "level sensing circuits to determine whether coins stacked in storage tubes in its TRC series coin changers are of a minimum or maximum height," and Coinco does not contest this description.  Infringement claims against other Mars changers were withdrawn.

1

I.    **Background**

The following facts are stipulated.  A coin changer typically consists of two main components: (1) a coin acceptor and (2) a changer control portion that includes, among other things, change making features, coin storage tubes, and accounting and control circuits.

The coin acceptor (also sometimes called a slug rejector), among other things, determines the authenticity and denomination of the coins and directs the coins toward appropriate locations.  Once an individual coin's validity has been determined by the coin acceptor, the coin is directed towards a separator portion of the coin acceptor for direction to an appropriate location.

Coin acceptors by themselves have no coin tubes, and therefore no coin tube storage, and no change payback capability.

When a coin acceptor is mated with a changer control portion of a coin changer the coin is generally directed towards one of three places: (1) an appropriate coin tube in the changer control portion where the coin is stored for future payout, (2) the vending machine's cash box in the event the coin tubes are full with coins or no coin tube is provided for such denomination, or (3) the vending machine's coin return in the case where the coin is rejected for some reason.  The changer control portion of the coin changer that includes change

2

making features generally includes multiple coin tubes for storing coins for payout and the mechanisms for dispensing coins from the various coin tubes to the coin return as required, such as change due to a customer.

Mated coin acceptor portions and changer control portions are routinely and typically offered and sold as coin changers.

Mars' TRC Series coin changers and Coinco's 9300 and 3000 series coin changers are all coin changers that employ mated coin acceptor and changer control portions.

Changer control portions of coin changers are not routinely or typically offered and sold without an associated coin acceptor.  In contrast, some coin acceptors are offered and sold independently from and apart from changer control portions of coin changers.  Mated coin acceptors and changer control portions are routinely and typically offered and sold as coin changers by Mars as TRC series coin changers.  The changer control portions of the TRC series coin changers are not typically or routinely offered or sold without the associated coin acceptors of such coin changers.

Coinco's '857 patent entitled "Detection Device" was issued on March 10, 1981 to H.R. Electronics Company (a subsidiary of Coinco) as assignee of the applicant Joseph Leo Levasseur and was subsequently assigned to Coinco.  It is

based on an application filed in the United States on September 15, 1978.  The

'857 patent relates generally to coin and metal detection.  Coinco is, and at all

relevant times has been, the owner of the '857 patent.  The '857 patent expired on

September 15, 1998.

Coinco has charged Mars with direct infringement, literally and under the

doctrine of equivalents, of claims 1-3, 5, and 9 of the '857 patent, in violation of

35 U.S.C. § 271(a), by Mars' manufacture, use and sale of its TRC Series coin

changers, including Mars' 6000 (including 6010), 6200, 6700, 6800, 6800 ASIC,

6420 and 6510 series coin changers.  The limitations of the asserted claims have

been set forth by the parties as follows:

1. A metal detector

(a) comprising a circuit element having inductance and
capacitance and circuit means connected thereto,

(b) said circuit being capable of producing an oscillating
condition,

(c) means for repetitively impulsing the circuit element to
produce a series of timed bursts of oscillation therein the frequency,
magnitude and duration of each burst of which depend upon the
inductance, capacitance and resistance of said element,

(d) means for positioning an object to be detected in the field of
said element during the time said circuit element is being repetitively
impulsed whereby the bursts of oscillations produced therein are
modified as to frequency, magnitude and duration characteristics and

4

differ from the frequency, magnitude and duration characteristics of the element when no object is in the field thereof, which characteristics are representative of the object, and

(e) means operatively connected to said circuit element to respond to a particular characteristic of said bursts of oscillations.

2. The detector defined in claim 1 wherein said means responsive to the characteristics of the bursts of oscillations include means responsive to the change in the magnitude of adjacent cycles of the bursts of oscillations and to changes therein.

3. The detector defined in claim 1 wherein the means responsive to a particular characteristic of the burst of oscillations include means responsive to the damping rate of the bursts of oscillations.

5. The detector defined in claim 1 wherein the burst of oscillations in the form of a damped wave envelope the shape and frequency of which are dependent on characteristics of the object positioned adjacent to said circuit element.

9. The detector defined in claim 1 wherein the means responsive to the particular bursts of oscillations include means to establish a predetermined voltage, and means to count the number of cycles of oscillations that exceed said predetermined voltage.

Coinco has also charged Mars with inducing purchasers of Mars TRC series coin changers to infringe claims 1-3, 5, and 9 of the '857 patent and contributing to such infringement, in violation of 35 U.S.C. § 271(b), (c), literally and under the doctrine of equivalents.

Coinco employs a detection device such as is claimed in one or more claims of the '857 patent in the coin acceptor portion of its 9300 series coin changers and

in its 880 coin acceptors, and as coin presence sensors in the separator portions of Coinco's 9300 and 3000 series coin changers and Coinco's 880 series coin acceptors. Such sensors are part of a particular type of ringing circuit as disclosed in the '857 patent.

Operation of a ringing circuit per se is based upon phenomena recognized long before Coinco's application for its '857 patent and Mars' application for its U.S. Patent No. 4,460,003 (the '003 patent or the Barnes patent).

Mars' coin mechanisms made and sold in the United States since approximately 1982 have used the coin tube level measurement method and apparatus described in the '003 patent, which issued on July 17, 1984. It describes a coin presence sensing apparatus. The '003 patent issued three years after the '857 patent issued, and the '857 patent was disclosed to the examiner by Mars during prosecution of the '003 patent. Coincidentally, both the Coinco '857 and the Mars '003 patents issued after examination by the same examiner.

Mars asserts as defenses that the claims, when properly construed, especially in accordance with Section 112, paragraph 6 (relating to means-plus-function limitations) have not been infringed, and that if not so construed, they are obvious. Invalidity is also asserted on various other grounds. Pretrial motions limited the damages period for failure to mark, and to a reasonable royalty only on

the coin tube sensor portion of the accused coin changers, rather than on the entire

changer, if infringement were to be found.

## II.   Discussion

### A.   Legal Standards

A patent infringement analysis is a two-step process.  Cybor Corp. v. FAS

Techs., 138 F.3d 1448, 1454 (Fed. Cir. 1998).  First, the Court must construe the

claims of the '857 Patent.  Claim construction is a matter of law to be decided by

the Court.  Markman v. Westview Instruments, 52 F.3d 967 (Fed. Cir. 1995) (en

banc), aff'd, 517 U.S. 370 (1996).  Claim construction must be performed without

reference to the allegedly infringing device.  Pall Corp. v. Hemasure Inc., 181 F.3d

1305, 1308 (Fed. Cir. 1999).  After determining the scope of the claims, the Court

proceeds to the second step of comparing the properly construed claims to the

allegedly infringing device.  Cybor Corp., 138 F.3d at 1454. .

To prove literal infringement, the patentee must show "that the accused

device contains each limitation of the asserted claim(s)."  Bayer AG v. Elan

Pharm. Research Corp., 212 F 3d 1241, 1247 (Fed. Cir. 2000) (citing Mas-

Hamilton Group v. LaGard, Inc., 156 F. 3d 1206, 1211 (Fed. Cir. 1998)).  "If any

claim limitation is absent from the accused device, there is no literal infringement

as a matter of law."  Id.

B.   **Claim Interpretation**

1.   **"A metal detector . . ."**

Mars' first argument is that the Preamble in Claim 1 ("A metal detector ...")
sets forth part of the invention that the inventor desired to define and protect, and
that therefore its language may constitute a claim limitation.  Coinco
responds that even if  the Preamble is a claim limitation, a "metal detector" would
include a metal coin detector, and Mars' accused products would infringe that
limitation because the accused Mars' products detect the presence of metal coins.
In response to Coinco's argument that "a metal detector," as used in the '857
patent should be interpreted as anything which detects metal, Mars asserts that it is
the "identifying " and "distinguishing" aspects of metal detection, rather than mere
detection, which are relevant and useful in the context of the '857 patent.
Therefore, Mars argues, all claims should be interpreted to require metal detection
that also identifies and distinguishes coins and other objects.  Mars points to the
specification and the prosecution  history for support. At column 2, lines 7-13 and
lines 30-34, and column 6, lines 34-38, the specification emphasizes the
importance of being able to distinguish and identify slugs and similar foreign and
domestic coins.  Another example is the reference to a "principal object" of the
invention as "distinguishing between and identifying objects such as coins..."

8

'857 patent, col. 3, lines 31-36. As to the prosecution history, in response to a rejection of Claim 1 and other claims, applicants argued that they had devised "a novel detecting device for accurately distinguishing between metal objects, such as between coins" and producing an output with characteristics "representative" of an object such as a coin.  DX 640, Prosecution History, p. 61, line 1 of Remarks - p. 62, line 7.  This is a clear expression of the applicants' understanding of the "distinguishing" aspect of their invention.

Nonetheless, the Court is unable to accept Mars' claim construction argument that "metal detector" should be interpreted to mean a metal detector that is also capable of recognizing individual coins and other objects and distinguishing one from another.  While the specification and the prosecution history certainly provide some support for this interpretation, the claim language itself supports Coinco's interpretation because the language of claim 1 does not limit the claim in the way Mars suggests.  See Merrill v. Yeomans, 94 U.S. 568, 570 (1876) (explaining that the claims are "of primary importance, in the effort to ascertain precisely what it is that is patented"); Markman, 52 F.3d at 980 ("The written description part of the specification itself does not delimit the right to exclude.  That is the function and purpose of the claims.").  Claim 1 refers to "an object to be detected" (col. 14, line 53) and the reference to "characteristics ...

representative of the object" (col. 14, lines 60-61) is insufficient to support a claim

limitation of identifying and distinguishing among coins as well as detecting them.

The specification also to some extent supports Coinco's interpretation.  At column

3, lines 46-48, it states:

> Another object of the invention is to make use of the damped
> wave characteristics of a pulsed oscillator circuit in a metal
> detecting device.

This part of the specification makes no mention of the identifying and

distinguishing functions that are at the heart of Mars' claim construction

argument.  The Court does not believe that the Preamble to Claim 1 should be

expanded beyond the plain meaning of "metal detector," even where some other

intrinsic evidence supports a qualification of that plain meaning, i.e., a metal

detector which also can identify, and distinguish among, objects detected.  Where,

as here, the meaning of the relevant claim term is clear, the specification and

prosecution history should not be used to modify that meaning.  See, e.g., Phillips

v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("In some cases, the

ordinary meaning of claim language as understood by a person of ordinary skill in

the art may be readily apparent even to lay judges, and claim construction in such

cases involves little more than the application of the widely accepted meaning of

commonly understood words.").

The Court's construction is also supported by the doctrine of claim differentiation.  See Andersen Corp. v. Fiber Composites, LLC, 474 F.3d 1361, 1368 (Fed. Cir. 2007) (explaining that the doctrine of claim differentiation is based on "the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope" (citation and internal quotations omitted)).  Claim 25, not at issue herein, refers to a circuit for detecting and *discriminating between* objects, but is otherwise similar in this context to other claims, including Claim 1 (emphasis added).  If Mars' claim interpretation argument were accepted, Claim 25 would have little independent meaning.

### 2. **"An object"**

Mars' next claim construction argument is that Claim 1 requires the detection of a single metal object, by positioning it in the field of the circuit element.  Mars makes this argument because its accused products only detect a plurality of metal objects, not a single object.

Claim 1, the only independent claim asserted, describes (insofar as relevant to Mars' argument now being addressed) a metal detector comprising a circuit, a means for repetitively impulsing it, a means for positioning *an object*, differing characteristics when *no object* is present, and characteristics representative of *the*

11

*object*.  (Emphasis added).  Based on the emphasized references to a singular object in Claim 1, Mars argues that Claim 1 should be construed to refer only to identifying and distinguishing individual objects such as coins, one at a time.[1] The language of claim 1, emphasized above, does support Mars' position.  So does the other relevant intrinsic language, quoted above from the prosecution history, where the applicants referred to an output representative of *an object* (emphasis added) such as a coin, in the course of opposing a rejection by the Examiner.  The Court agrees with Mars' claim construction argument in this respect; Claim 1 is interpreted to refer to detection of a single object.

### 3.     "Means for positioning . . ."

Another claim construction issue is whether Claim 1 should be interpreted to refer to testing in the manner described while the coin or slug to be tested is in motion in the "chute," which Mars regards as an entirely different place from the coin storage tubes where Mars' accused devices do their testing.  This relates to the language of Claim 1(d) referring to a "means for positioning an object to be detected in the field of said element . . . ."

Generally, "[t]he use of the word 'means' 'triggers a presumption that the

---

[1] Based on the Court's ruling above construing Claim 1 to refer only to "detecting," Mars' argument is modified accordingly.

inventor used this term advisedly to invoke the statutory mandate for means-plus-function clauses.'" Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1347 (Fed. Cir. 2002) (citation omitted); see also Kemco Sales, Inc. v. Control Papers Co., Inc., 208 F.3d 1352, 1361 (Fed. Cir. 2000) ("Use of the term 'means' in a claim limitation creates a presumption that 35 U.S.C. section 112, paragraph 6 has been invoked . . . ."). A party may rebut this presumption either by (1) showing that the claim element describing "means" does not recite a function corresponding to the means, or (2) by finding sufficient structure within the claim for performing the function. Allen, 299 F.3d, 1347; Kemco, 208 F.3d at 1361. Mars has asked the Court to construe the claim term "means for positioning" as a term in means-plus-function format, which would require looking to the specification for a description of the positioning structure. According to 35 U.S.C. § 112, ¶ 6, a claim element "may be expressed as a means . . . for performing a specified function without the recital of structure." Where a claim describes a means for a function without stating the structure associated with the means, "such claim shall be construed to cover the corresponding structure . . . in the specification . . . ." Id. This statute allows a patentee to draft a claim using generic language describing the means to perform a particular function, "provided that [the patentee] discloses specific structure(s) corresponding to that means in

13

the patent specification." <u>Kemco</u>, 208 F.3d at 1360; <u>Mass. Inst. of Tech. & Elecs.</u> <u>for Imaging, Inc. v. Abacus Software</u>, 462 F.3d 1344, 1361 (Fed. Cir. 2006); <u>Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.</u>, 145 F.3d 1303, 1307-08 (Fed. Cir. 1998) ("[T]he 'means' term in a means-plus-function limitation is essentially a generic reference for the corresponding structure disclosed in the specification.).

Claim 1(d)'s use of the phrase "means for positioning"  is means-plus-function language and must be interpreted in accordance with the rules applicable to such language set forth in § 112, ¶ 6.  Coinco does not argue to the contrary, nor could it; a function corresponding to the "means" is stated (positioning an object to be detected in a certain place) and no structure for performing this function is recited in the claim itself.

As to that function, Mars' position is convincing.  The Court agrees with the testimony of Mars' expert Donald R. Kesner, who testified that the "means for positioning" in the '857 patent is a chute, not a coin storage tube, and the chute's function is to control the position and orientation of the coin with respect to the sensor "such that the coin face is proximate the sensor and perpendicular to the electromagnetic field emitted by the sensor as the sensor is repetitively pulsed." (Kesner Report on Infringement at ¶ 2.4, pp. 9-10, Mars' Ex. 156.)  This is entirely

14

consistent with the structure described in the specification, which under § 112, ¶ 6

dictates the interpretation of Claim 1(d).  The specification  recites:

> During an operation a customer will deposit coins into the
> vending machine and each coin will in turn move through or
> adjacent to the inductive sensor 20.  In so doing each coin will
> have an affect (sic) on the field thereof and will produce a
> plurality of time spaced damped waves.  Keep in mind that
> as each coin moves down a *chute* (emphasis added) through
> or adjacent to the conductor 20 it will  have an affect (sic) on
> the field of the inductor and thereafter will move out of the
> field of the inductor. It can therefore be seen that the affect
> (sic) of the coin on the inductor will vary to some extent
> depending on where it is in relation thereto. . . . It is therefore
> important to be able to select or identify those rings or shocks
> of the conductor which produce damped waves when the coin
> is in the most advantageous position relative to the field of
> the conductor.

'857 Patent, col. 7, ll. 1-12, 25-29.


Moreover, one of the inventors of the '857 patent, Leo Levasseur, was

questioned about the meaning of "chute" in the patent, at column 1, line 34.

He responded:

> A chute would be a path in which a coin could be guided as
> gravity moved it from one level to another, and during that
> course, whether it was straight vertically up and down or on a sloped angle,
> could be detected, or somehow looked at.

40.151-5-9

He also testified that a chute typically "guide[s] a moving coin."  40.152-13-

15

16.  In no way does this inventor consider coin storage tubes to be a "chute."  This testimony supports Kesner's view that the chute enables evaluation or detection of a moving coin, i.e., "during that course" of generally downward movement.  Indeed, the patent itself, at column 2, lines 37-42, describes the invention as follows:

> The present construction employs an inductor device that is pulsed or shocked usually on some established time schedule that can be made to be very rapid *in relation to the speed of movement of the coin therethrough to produce a plurality of momentary oscillating conditions in the form of damped waves.*
> (emphasis added)

Also, at column 3, lines 19-26, there appears:

> [W]ith the present device it is possible to produce numerous reoccurrences of a damped wave in a very short time interval so that as the object being detected *moves through or adjacent to the field of the inductor* many similar tests of the object can be made, and it is possible to select only those tests, or only those damped waves, that occur when the object is in the most desirable position relative to the inductor. . . . (emphasis added)

Thus, it is abundantly clear that "means for positioning"  in claim 1(d) of  the patent is directed to positioning a moving coin or object.

Further support for this construction (i.e., that the claimed "means for positioning" is a chute, not coin storage tubes)  lies in the disclosure of Coinco's predecessor's own patent No. 4,151,904, where the inventors were 2 of the same 3 inventors of the '857 patent.  In that '904 patent, a distinction is made between a

16

"chute" and a "coin storage" unit:

> Thereafter, the coin, whether acceptable or not, will move down the chute reserved for valid coins and will fall into the cash box or other coin storage unit (not shown).

Thus, column 2, lines 62-65 of Coinco's '904 patent draws a distinction between a "chute" and a "coin storage" unit. This directly contradicts and far outweighs other evidence and argument offered by Coinco to the effect that a coin storage tube, such as that used in the accused Mars products, could be a "chute."

The Court has no difficulty, based on this evidence, in construing Claim 1(d)'s "means for positioning" language. First, this part of the claim is expressed in means-plus-function form, so the Court looks to the patent specification for disclosure of the structure for performing the positioning function. In the '857 patent, that structure is a chute, which guides and positions the moving coin or object through the electromagnetic field produced by the circuit element of Claim 1 (a) while that "circuit element is being repetitively impulsed."

As discussed above, the patent issued to two of the inventors of the '857 patent, prior art (e.g., the Davies Canadian patent No. 951403), and the testimony of one of the inventors herein all support the distinction between a "chute" and coin

storage tubes.[2]

There is certainly nothing disclosed in the patent about coin tube sensors. The "means for positioning" disclosed can only be the chute, whose function in the '857 is accurately described by Mars' expert witness as ensuring that the coin face is proximate the sensor and perpendicular to the electromagnetic field emitted by the sensor which is used to evaluate the coin.

**C.   Infringement**

The relevant structure in the accused devices is clearly depicted in Defendant's exhibit 518, at page 10.  This excerpt from Mars' product literature shows the coin storage tubes and the upper and lower coin tube sensors.  A cross-section of the dime, nickel and quarter coin tubes and the sensors appears as figure 9 of the '003 patent, Plaintiff's Exhibit 170.  The coin tube sensors are used to determine whether the stack of coins in the coin storage tube has reached the height of a lower or upper coin tube sensor.  They do so by detecting the presence or absence of a stack of coins proximate to the sensor.

**1.   Infringement - "Metal detector"**

As discussed above in connection with claim construction, it is clear that the

---

[2] While a coin storage tube does briefly "guide a moving coin," that function ceases when the coin comes to rest and is only incidental to its function of storing coins for change-making purposes in the accused products.

accused devices detect the presence of metal.  As construed, this claim limitation requires no more.

### 2.  Infringement - Detection of a "single object"

As discussed above in connection with claim construction, claim 1 requires that a single coin or other object, not a plurality thereof, be examined.  The accused coin tube sensors function by examining whether a stack of coins has reached a prescribed height or heights.  A stack of coins is a plurality, not a single coin.  This limitation of Claim 1 is not infringed.

### 3.     Infringement of Claim 1(d)-"means for positioning..."

"Literal infringement of a means-plus-function claim limitation requires that the relevant structure in the accused device perform the identical function recited in the claim and be identical or equivalent to the corresponding structure in the specification."  Applied Med. Res. Corp. v. United States Surgical Corp., 448 F.3d 1324, 1333 (Fed. Cir. 2006).  "Once the relevant structure in the accused device has been identified, a party may prove it is equivalent to the disclosed structure by showing that the two perform the identical function in substantially the same way, with substantially the same result."  Id.

As to infringement of this claim limitation by Mars' accused coin tube sensors, Coinco argues that the coin tubes themselves correspond to the "means for

positioning" limitation in claim 1(d). The Court disagrees, and finds that Mars'

accused device does not perform the identical function described in the '857 patent.

The function of the coin tubes in the Mars devices is not to "position," i.e., to

control the orientation of a coin as it moves past a sensor; the coin is in free fall and

tumbles until it comes to rest on top of the coins already in the tube. The height of

the coin stack, not any individual coin,  is tested by Mars' coin tube sensors. In the

Mars devices the coin faces are never proximate the sensor and perpendicular to the

electromagnetic field emitted by the sensor, as disclosed in the '857 patent. If they

were, the Mars devices could not test the height of the coin stack.

Coinco's response as to infringement of this element of claim 1 is merely that

Mars' coin tubes position the coins to be detected in the fields of the high level and

low level coin tube sensors. In addressing (and attempting to rebut) Mars' "means

plus function" argument with respect to claim 1(d), the "means for positioning"

language, Coinco's expert's entire testimony was:

> I would look at column 7, lines 1 through 10 . . . where it talks about
> depositing coins in the vending machine, and the coins move through
> or adjacent to the inductive sensor. It talks about the coins moving
> down the chute, so it seems clear that the positioning means disclosed
> in this patent is the coin path through the acceptor. And changer.

40:134-15-21. Thus, it is clear that Coinco's expert has identified the structure

described in the patent for performing the claimed function as the coin path through

20

the acceptor, i.e., the "chute." To this extent, the Court agrees.   To the extent that
this witness may have meant that the positioning means claimed in the patent
extends to the changer, and not just within the acceptor, the Court rejects that
testimony.  The specification makes it abundantly clear that "the means for
positioning" functions to position the coin (or object) in the field of the inductor so
that the characteristics of the resultant electromagnetic field may be observed:

> Any one or more of these characteristics may be used in the
> identifying or detecting process, and with the present device it is
> possible to produce numerous reoccurrences of a damped wave in a
> very short time interval so that as the object being detected moves
> through or adjacent to the field of the inductor many similar tests of
> the object can be made, and it is possible to select only those tests, or
> only those damped waves, that occur when the object is in the most
> desirable position relative to the inductor to control whether to accept
> or reject a particular coin or object or to determine whether the coin
> or object meets certain criteria for establishing acceptability or for
> some other purpose.

'857 patent, col. 3, ll. 17-30.

There is no dispute that a coin's "most desirable position relative to the
inductor" is with the face of the coin perpendicular to the electromagnetic field
emitted by the inductor, so that many similar tests of the moving coin can be
administered.  This is not the case when Mars' accused coin tube sensors address
the stack of coins stored in the coin storage tubes.  Those coins are parallel to the
electromagnetic field emitted by the inductor.

21

Applying this distinction, the accused coin storage tubes do not constitute a "means for positioning," as claimed in Claim 1(d).  Furthermore, as indicated above, Mars' coin tube sensors do not test moving coins; they test the height of a stack of coins which have stopped moving.  Not only do they not perform the identical function, but they perform an entirely different function.  There is no equivalence as to function and therefore no infringement of this "means plus function" limitation.

## III. Conclusion

Since two limitations of Claim 1 are not present is the accused coin tube sensors, there can be no infringement of Claim 1.  Claims 2, 3, 5 and 9 depend from Claim 1, and therefore are also not infringed.

Because the '857 patent expired many years ago and because the Court has found no infringement, the Court does not address the invalidity arguments advanced by Mars as a defense to infringement.

_____   /s/ John C. Lifland, U.S.D.J.

April 17, 2007